THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BLAINE P. BRYCE, Appellant.

Third Department, August 13, 1998

### APPEARANCES OF COUNSEL

*O'Connor & Yoquinto,* Troy (*Thomas J. O'Connor* of counsel), for appellant.

*Sol Greenberg, District Attorney* of Albany County (*John E. Maney* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Defendant was charged with murder in the second degree in connection with the January 1988 death of his infant son. At the ensuing trial, defendant's claim of accidental injury was countered with medical evidence that the child had died as the result of a massive brain hemorrhage due to a fractured skull. In that connection, the People introduced a small piece of the child's skull, which was stated to have been removed from the frontal portion and disclosed a fracture running from the anterior fontanelle of the head to the bridge of the nose. According to a prosecution forensic expert, the fracture was of the kind that could not have been accidental but could have resulted only from the application of force equivalent to that experienced in a drop from a second-story window or from a high-speed auto accident (*People v Bryce,* 88 NY2d 124, 127). The jury found defendant guilty of depraved indifference murder, and on direct appeal this Court affirmed the judgment of conviction and the 25-year-to-life sentence imposed thereon (*People v Bryce,* 174 AD2d 945, *lv denied* 79 NY2d 854).

Subsequently, defendant arranged to have the infant's body exhumed. Examination by defense medical experts disclosed that the front of the child's skull was intact, that there was no

evidence of a frontal bone fracture and that the bone fragment that had been exhibited at trial actually came from the area of the child's temple. Thus armed with reasonably conclusive evidence that prosecution witnesses had given false testimony concerning the source and medical significance of the bone fragment and the nature of the injuries sustained by the infant, defendant moved pursuant to CPL article 440 to vacate the judgment of conviction. County Court denied the motion. On appeal this Court affirmed finding, first, that defendant failed to support his claim of prosecutorial misconduct with competent evidence and, second, that in view of other prosecution evidence tending to negate the claim of accidental injury, defendant's newly discovered evidence was not such as would probably change the result if a new trial was ordered (*People v Bryce*, 210 AD2d 816, 817, *revd* 88 NY2d 124, *supra*).

On further appeal, however, the Court of Appeals reversed our determination and remitted the matter to County Court for a new hearing (*People v Bryce*, 88 NY2d 124, *supra*). The Court of Appeals found at least facial merit to defendant's argument that, although subsequent events established that the skull and brain had always been available to him (albeit through the undesirable process of exhuming the child's body), defendant's justifiable reliance upon the People's representations that they had removed those body parts and preserved them for defendant's examination prior to trial had the effect of depriving defendant of access to them as effectively as if they had been in the People's control. Apparently concluding that the skull and brain could thus constitute *Brady* material upon a finding that such representations had actually been made, the Court of Appeals ordered a hearing "to determine if the People made such representations, whether the material allegedly withheld was exculpatory and if so, whether there is a reasonable probability that the verdict would have been changed had the jury heard it" (*id.*, at 126).

Upon remittal, County Court decided to segment the inquiry, taking evidence first on the question of whether the People represented to defendant that they would preserve the skull and brain, and proceeding to the remaining issues only upon a finding, if any, that such representations had been made. At the hearing thus conducted, County Court permitted defendant to call Paul Der Ohannesian, the Assistant District Attorney in charge of the prosecution against defendant, but refused defendant's request that Der Ohannesian be declared a hostile witness and severely limited the scope of the questioning. Fol-

lowing the hearing, the court determined that the People represented only that "whatever the pathologist had would be made available to [defense counsel]", and that defendant failed to satisfy his burden of establishing any misrepresentation by a preponderance of the evidence. Defendant appeals.

Initially, we are unpersuaded by defendant's claim that County Court impermissibly segmented the evidentiary hearing conducted pursuant to the Court of Appeals remittal. Based upon our reading of the Court of Appeals opinion and the fairly obvious rationale underlying it, we conclude that the skull and brain could constitute *Brady* material only if the prosecutor made false representations that they had been preserved and were available to defendant. In the absence of such representations, there would be no reason to determine whether the evidence was exculpatory because there would be no causal connection between the actions of the prosecutor and the timing of defendant's exhumation request. In fact, if defendant's reading of the Court of Appeals opinion is given credence, the first inquiry, whether there has been a false representation, is superfluous. We are similarly unpersuaded by defendant's further claim, pursued throughout the hearing and on this appeal, that County Court was obligated to consider whether the People breached a duty to preserve any and all material subject to discovery, not just *Brady* material. This contention is directly contradicted by the plain language of the Court of Appeals opinion, which placed significant limitations on the scope of the inquiry and took great care to announce at the outset that it found merit only in defendant's allegation "that the People failed to preserve and deliver *Brady material* to him before trial *after assuring him they would do so*" (*People v Bryce*, 88 NY2d 124, 126, *supra* [emphasis supplied]).

That is not to say, however, that defendant could ask no questions of the prosecutor beyond just what was said and when.* To the contrary, we are persuaded by defendant's second point, that County Court's evidentiary rulings so severely and impermissibly restricted the scope of his inquiry as to constitute a denial of due process. Defendant's failure to

---

* At the hearing, defense counsel aptly characterized the questioning that County Court's rulings *would* permit to be as follows:

"[D]id you make representations to [defendant's trial counsel]?"

"No."

"Thank you. Let's go home."

timely examine the skull and brain prevented timely disclosure of a serious flaw in the prosecution's case. If the failure was occasioned by defendant's own neglect, he has no remedy. However, should it be established that the fault lies with the People, the ramifications are significant. Under the circumstances, County Court had an obligation to permit a full and even-handed inquiry, reasonably calculated to bring out all relevant evidence, direct and circumstantial, concerning the representations that were made by the People. We conclude that County Court abused its discretion in refusing to permit defense counsel to examine Der Ohannesian as a hostile witness (*cf., People v Davis*, 163 AD2d 826, *lv denied* 76 NY2d 939; *People v Marshall*, 144 AD2d 1005, *lv denied* 73 NY2d 893) and in restricting defendant's questions to those reasonably calculated to elicit direct evidence of statements actually made by the prosecution. As defendant was denied the opportunity for a full inquiry, we are constrained to order a new hearing before a different Judge.

MIKOLL, J. P. (dissenting in part and concurring in part). I agree that a new hearing is required, but disagree that it should be limited in the first instance to the question of whether the prosecution misrepresented the availability of the evidence.

My view of the matter is that the evidence in question was either *Brady* material or it was not, and its status as such does not depend solely upon whether the prosecution misrepresented its availability. While the defense has indeed asserted that such misrepresentations were made, both expressly and implicitly in, for example, physician Michael Baden's reference to his examination of "retained skull bones", and while this assertion clearly is implicated in the Court of Appeals opinion in *People v Bryce* (88 NY2d 124), I do not construe the Court's directive as justifying the limited inquiry sanctioned by the majority. The Court of Appeals ruled that "a hearing should be held to determine whether the District Attorney misrepresented to defense counsel that the skull and brain tissue had been preserved and that they would be available for examination by his experts before trial, whether the skull constituted *Brady* material and, if it did, whether a new trial is required" (*id.*, at 128). Although this sentence may be susceptible to the construction accorded it by the majority, initially one wonders why the Court of Appeals did not insert "and if so" between the first and second inquiries as it did in the case of the second

and third inquiries.* More importantly, manifest in the Court's opinion is its concern with whether the evidence was *Brady* material and, if so, the effect of its nonavailability on the integrity of defendant's conviction.

Defense counsel's dogged determination has brought to light serious prosecution error, conclusively establishing that the State mishandled and misidentified important forensic evidence and then presented to the jury a false medical opinion. I am at odds with the majority's premise that, notwithstanding this serious prosecution error, including mishandling, misidentifying and misrepresenting to the jury the critical medical evidence in the case, the question of whether defendant was deprived of a fair trial is reached only if a hearing court determines that affirmative misrepresentations were made by the prosecution. This would mean that even if the evidence was exculpatory (a determination which would never be made unless the first query was answered affirmatively), and even where, as here, defendant made a general *Brady* demand, the majority would hold the prosecutor under no duty to disclose it because defendant, by exhuming the child's body, could have discovered the evidence himself. I cannot subscribe to such a construction of a prosecutor's obligation under the Federal and State Constitutions, and *Brady v Maryland* (373 US 83), nor do I believe that it comports with the letter or the spirit of the Court of Appeals opinion.

I would reverse and remit for a new hearing before a different Judge, permitting a full and fair inquiry designed to elicit the truth and determine whether defendant was deprived of a fair trial.

MERCURE, CREW III, YESAWICH JR. and PETERS, JJ., concur; MIKOLL, J. P., dissents in part and concurs in part in a separate opinion.

Ordered that the order is reversed, on the law, and matter remitted to the County Court of Albany County for a new hearing before a different Judge.

---

* Indeed, the directive is stated a second time in the opinion, with virtually identical language, diminishing the likelihood of chance phraseology.